[Civ. No. 19991.   First Dist., Div. Three.   Mar. 30, 1962.]

Estate of EARL C. HUGHES, Deceased.   JOSEPH R. ALCANTARA, as Testamentary Trustee, etc., et al., Petitioners and Respondents, v. BLANCHE V. HUGHES et al., Claimants and Appellants.

F. Henry Ne Casek, in pro. per., for Claimants and Appellants.

Stewart Cureton, Thomas A. Black and J. Clark Benson for Petitioners and Respondents.

Andrew F. Burke as Amicus Curiae on behalf of Petitioners and Respondents.

DEVINE, J.—This appeal involves the construction of section 41 of the Probate Code, which is the California law placing certain limitations on testamentary devises and bequests to charity.

Appellants are Blanche V. Hughes, sister of the testator Earl C. Hughes, and F. Henry Ne Casek, who is attorney for Blanche V. Hughes, but who appeals in his own right as holder of an assignment of a one-third interest in his client's rights to her deceased brother's estate.

The will, a holograph which was executed about three

months before the testator's death, disposes of the estate, the net amount of which was about $65,000 at the time of distribution, in this way: (1) Relatively small bequests are made to, or in trust for, individuals, and about these bequests there is no question. The bequests will, however, be counted in arriving at the total amount of the estate and in the amount of noncharitable bequests. Among these bequests is the sole legacy to Blanche V. Hughes, the sum of one dollar. (2) A trust fund of $10,000 as a loan fund for the education of medical students, Joseph R. Alcantara to be trustee. (3) A trust fund, with the same trustee, for the benefit of Geneva L. McDougall during her lifetime and so long as she remains unmarried and until she reaches the age of 80 years, payable at the rate of $125 per month, with discretionary powers to increase the monthly payments in case of need because of sickness or other causes. The will provides that, upon termination of the trust, the corpus is to be divided among Shriners Hospital of San Francisco, City of Hope, Duarte, California, the Cancer Fund, "and to any other worthy cause, which in Trustee's opinion is deserving."

After the will had been admitted to probate, and before the decree of distribution, appellant Blanche V. Hughes filed with the court an affidavit of heirship; a claim to two-thirds of the portion bequeathed and devised to charity, on the theory that the legacies were excessive under section 41 of the Probate Code; and an assignment to her attorney of a one-third portion of her share.

The superior court, in the decree of final distribution, reserved jurisdiction to determine at the time of the death, marriage, or attaining of the age of 80 years of Geneva L. McDougall, "to whom and in what proportions the assets of the GENEVA L. McDOUGALL trust shall be distributed," and to recompute the inheritance tax and to allow a refund if the charities receive a greater proportion of the estate than that indicated in the inheritance tax report. This decree did not, it may be seen, state what would be the disposition of the corpus of the charitable trusts if appellant were to die before the termination of the McDougall trust, for it reserved the matter of determining the distributees.

The trust for medical students' loans is not, like the charitable trust which follows the McDougall trust, postponed in enjoyment by the will, but the court directed in the decree of distribution that the medical trust was a charitable bequest and should be considered at the time of the termina-

tion of the McDougall trust for the purpose of deciding whether the proportion of the estate distributed to charity exceeds one-third of the distributable amount.

About three months after the decree of final distribution, and after that decree had become final, the trustee, Joseph R. Alcantara, petitioned the court for instructions in respect of the medical loan trust, stating that a revolving loan fund as contemplated in the will was impractical, and asking the court for an outright distribution to one or more medical schools for a loan fund, under the *cy pres* doctrine. The court agreed with the trustee, and there is no dispute on this appeal as to the propriety of applying *cy pres,* but the court, in its order, decreed that:

". . . The fund may not be distributed at this time since, if the sister survived the life tenant and claimed the portion of the distributable estate left to charity which exceeded one-third of the distributable estate, under Probate Code Section 41, the loss due to such taking to all of the charitable beneficiaries, including the recipients of this fund, should be proportionate to the share in the trust that each actually receives.

"IT IS ORDERED that the said trust monies be retained in the trust until the death of either the sole surviving heir, BLANCHE V. HUGHES, or the life tenant, GENEVA L. McDOUGALL, at which time said trust monies shall be distributed as set forth above, pursuant to the rule of *cy pres.*"

Thus, the court for the first time decreed, at least by necessary implication, that if Blanche V. Hughes is dead at the time of the termination of the McDougall trust, when the disposability of the medical trust can be determined, the medical trust fund shall be distributed to a hospital or to hospitals. The order does not directly decide that the same effect would result from the death of Blanche V. Hughes as to the corpus of the McDougall trust, if such death occurs before the death, remarriage, or arriving at 80 years of Geneva L. McDougall, but there is no essential difference in the two trusts, now that the court has postponed the distribution of the medical charity under *cy pres,* as the other charities were postponed by the will itself.

Blanche V. Hughes had not appealed, and surely could not have appealed successfully, the decree of distribution, which did not determine, but reserved decision as to, the persons who would share, and the proportionate amounts, in the McDougall corpus; but she and her assignee have appealed from the order instructing the trustee, which does affect her

rights, by declaring, in effect, that whatever claim she has under section 41 of the Probate Code exists only if she survives Geneva L. McDougall.

The question whether the right to a duly claimed excess over the permissible amount devisable under section 41 of the Probate Code vests an interest in the heir which survives the heir's death has not been decided in this state, and this is the principal question in the case.

Before considering this question, however, we must dispose of another issue. Appellants contend that the medical trust of $10,000 should have been ordered distributed presently, when the order instructing the trustee was made, and that this should have resulted in distributing two-thirds of the fund to appellants. They argue that it is presently ascertainable that this fund, which, unlike the McDougall trust, is a fixed amount, exceeds the sum allowable to charity, and that because, under the order, no duty having been imposed on the trustee except to hold the fund, the trust is a dry or passive one, and the property becomes at once the property of the beneficiary or beneficiaries. We cannot agree.

█ Section 41 of the Probate Code, so far as it is relevant to this case, provides that charitable bequests and devises may not collectively exceed one-third of the testator's estate as against his spouse, brother, sister, nephew, niece, descendant or ancestor, who would otherwise have taken, and if they do, a prorata deduction shall be made so that the aggregate of charitable bequests and devises shall be one-third of the estate.

█ Because the section refers to the exceeding of the allowable amount by charitable bequests and devises *collectively,* as compared with the total estate, the medical fund must be withheld until the termination of the trust, when it will be possible to ascertain the respective shares of the distributable assets (*Estate of Campbell,* 175 Cal. 345 [165 P. 931]; *Estate of Brown,* 140 Cal.App.2d 677 [295 P.2d 566]; *Estate of Gorchakoff,* 108 Cal.App.2d 44, 46-47 [238 P.2d 121]), especially since the corpus is, by the terms of the will, subject to invasion for the benefit of the life tenant (*Estate of Brown, supra,* p. 679).

█ We proceed, then, to the principal problem, namely whether, as respondents claim, the right to contest bequests or devises which may prove to be excessive is a personal right which, although timely asserted by a member of a preferred class under the statute, ceases with the death of the claimant,

in a case where possession of the corpus has been postponed by a life estate, or, as appellants contend, the right is of such real and permanent character that, once duly asserted, it may in itself be bequeathed by will of the claimant or inherited if the claimant dies intestate or assigned during the claimant's lifetime. We have come to the conclusion that the first of these solutions is the correct one.

Because, as stated above, the problem is a new one, it is appropriate to give, preliminarily, certain limitations of the question and of the answer. We need not decide, for it has been decided, on the effect of failure of the claimant, the preferred heir, to have asserted the claim against the dispositions to charity. In *Estate of Bunn*, 33 Cal.2d 897, 900-901 [206 P.2d 635], the spouse died about a month after the testatrix's decease, and had made no challenge to the charitable bequest, but the administrator of Mr. Bunn's estate, as well as collateral heirs of Mrs. Bunn, sought to have the one-third rule applied. The Supreme Court held that the right to contest a will on this ground is purely personal, narrowly restricted, and does not pass to the representative of the decedent as part of his estate. In the case before us, the heir herself has contested the charitable dispositions.

We do not decide whether a claim filed by one heir of the preferred class inures to the benefit of other heirs, preferred or otherwise, because petitioner herein is the sole heir of the decedent.

Nor do we decide whether the right of an heir of the preferred class who personally asserts a claim against charitable bequests or devises, but dies before decree of distribution, terminates with his death; we decide only as to the result where there is a postponement beyond the decree of distribution, of the right to possession and enjoyment.

First among the reasons for our holding is the principle that "[c]ourts look with favor upon all attempted charitable donations and will endeavor to carry them into effect if it can be done consistently with the rules of law." (*Estate of Bunn, supra*, 33 Cal.2d at p. 903.)

Then, it is an important consideration that the restriction contained in the statute is a limitation upon the right of the testator to dispose of his property in accordance with his own inclinations and desires. (*Ibid.*, p. 900.)

The careful enumeration by the Legislature of the preferred class of heirs who may contest, in section 41 of the

Probate Code, gives indication that these are the only ones for whom the Legislature was solicitous as against charities favored by the testator, under the rule *inclusio unius, exclusio alterius*. (45 Cal.Jur.2d, Statutes, §133, p. 639; *Estate of Gilbert*, 148 Cal.App.2d 761, 774 [307 P.2d 395].) If the right to assert an excess donation to charity were an assignable and devisable right, even though possession were deferred by many years, merely because of a claim made during administration by a preferred heir, persons entirely unknown to the original testator, who had no claim whatever to his bounty, might enjoy the greater part of his estate by reduction of the amounts which the testator gave to cherished charities. Indeed, the preferred heir then could, by will, devise to a different charity. This does not seem compatible with the Legislature's specification of persons entitled to challenge. ▮ The purpose of section 41 is to protect the heirs named therein, as those who should be natural objects of the testator's bounty, and not as a discrimination against charities by limiting their power to take. (*Estate of Dwyer*, 159 Cal. 680, 687 [115 P. 242] ; *Estate of Adams*, 164 Cal.App.2d 698, 702 [331 P.2d 149].)

▮ Moreover, the preferred heir may, as a personal choice, decide to waive the provisions of section 41 of the Probate Code. It seems right that although the claim must be asserted promptly in order to preserve it (*Estate of Bunn, supra*), choice should still be reserved to the claimant *alone*, when the time comes, if it ever does, when the charitable donations actually do exceed the one-third. If the heir survives the trust, she may then decide, because of the character of the estate at that time, because of the nature of the charities, or because of her own condition of health or of finances, either to press her claim or to waive it. This quite personal decision is referred to in *Estate of Bunn, supra*, at page 901, and in cases collected in 154 American Law Reports 689-691.

If the heir dies before she could have exercised her claim, she will not have been able to assign or devise this personal and waivable claim, for we do not think that the law intends to make it a transferable, devisable and valuable right. ▮ The right of the preferred heir is a personal and inchoate thing, as recognized in *Estate of Bunn, supra*, in which it is referred to as "personal" (p. 901).

▮ ▮ We distinguish the case from will contests cited by appellants, which, once filed, outlive the contestant's death (*Estate of Baker*, 170 Cal. 578 [150 P. 989]), and which

may be initiated by the personal representative of a decedent who might have contested (*Estate of Field*, 38 Cal.2d 151 [238 P.2d 578]), in this: that a property right of the primary party had been violated, if the will were invalid, and therefore, under section 954 of the Civil Code, which provides, in part, that ''A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner,'' the right to contest survives. In the case of charitable bequests, there is no present ''violation'' of a property right. (*Estate of Gorchakoff, supra,* 108 Cal. App.2d at pp. 46-47.)

Distinguishable on the same ground is the recent case of *Harris* v. *Harris,* 57 Cal.2d 367 [19 Cal.Rptr. 793, 369 P.2d 481], wherein it was held that a gift by the husband of his wife's interest in community property, without her consent, is a violation of a property right.

Appellants stress a sentence in one of the cases cited above, *Estate of Campbell,* 175 Cal. 345, 352 [165 P. 931], in which the court, in a case wherein the determination of charitable amounts had to be postponed because of an intervening trust, said, referring to the heir's interest: ''It is the valid and paramount trust that excludes him as such successor during his life, and if he has in fact any interest in that capacity, as may hereafter be determined, it is an interest that he can convey or dispose of by will, and that, if he dies intestate, will pass to his heirs.'' A reading of the case shows this excerpt to be dictum, but, besides, the case was decided at a time when section 1313 of the Civil Code, then the charity-limitation statute, provided that all dispositions contrary to it (including dispositions in excess of one-third), ''shall be void.'' Under the present statute, section 41 of the Probate Code, dispositions in excess of one-third to charity are valid, although challengeable. (*Estate of Adams, supra,* p. 701; *Estate of Moran,* 122 Cal.App.2d 167, 169 [264 P.2d 598]; *Estate of Leymel,* 103 Cal.App.2d 778, 781 [230 P.2d 48]; *Estate of Haines,* 76 Cal.App.2d 673, 679 [173 P.2d 693].)

Finally, we note that, although the point has not been mentioned in the briefs, the order directing the trustee is incomplete wherein it refers to retaining the trust monies until the death of either Blanche V. Hughes or the death of Geneva L. McDougall, but does not refer to the termination by the attaining of the age of 80 by Geneva L. McDougall or by her marriage.

The last paragraph of the order directing the trustee is

modified to read: "IT IS ORDERED that the said trust monies be retained in the trust until the death of either the sole surviving heir, BLANCHE V. HUGHES, or the life tenant, GENEVA L. MCDOUGALL, or until GENEVA L. MCDOUGALL marries, or until GENEVA L. MCDOUGALL reaches the age of 80 years, at which time said trust monies shall be distributed as set forth above, pursuant to the rule of *cy pres.*"

As so modified, the entire order directing the trustee is affirmed. Respondents to recover costs on appeal.

Draper, P. J., and Salsman, J., concurred.