[Civ. No. 22073. First Dist., Div. Three. Mar. 11, 1965.]

Estate of ALFRED ERNEST KRETSCHMER, Deceased. FREDA M. MANUEL, Individually and as Executrix, etc., Petitioner and Appellant, v. KATHRYN KRETSCHMER MALE et al., Claimants and Respondents; BANK OF AMERICA, Claimant and Appellant.

John M. Scott and Myrick & Deering and Scott for Petitioner and Appellant and Claimant and Appellant.

Halley, Cornell & Wollenberg and Robert H. Cornell for Claimants and Respondents.

DEVINE, J.—The record in this appeal is as spare as possible for bare existence. It consists of a skeleton, the clerk's transcript, which is composed of six slender structures: an account and petition for instructions, objections and a counter-petition, order settling account, judgment determining estate property and interest in estate, decedent's will, and notice of appeal. Each party has added some flesh to the skeleton in the form of statements of fact in briefs. We are disposed to regard these statements as stipulations in so far as they may be helpful to the adversary of the one making them, and to disregard them as off the record wherever they would serve the interest of the respective author. The record was augmented, by stipulation, to include a note and deed of trust, referred to below.

### The Note and Deed of Trust

The first question in the case is whether there is substantial evidence to support the trial judge's finding that

a four-fifths interest in a certain promissory note and deed of trust held by testator is property of the estate. There is but one appellant from this part of the judgment, a sister of testator, who contends that the note was bought with funds which, to the extent of two-fifths, were joint tenancy assets of testator and his sister. Respondents concede that $2,000 was withdrawn from a joint tenancy account in the names of decedent and appellant, and was applied toward purchase of the note and deed of trust.

Appellant cites the law, correctly, that personal property acquired in the name of one of the joint tenants by joint tenancy funds, ordinarily retains its joint tenancy character in the absence of an agreement to the contrary. (*Fish* v. *Security-First Nat. Bank,* 31 Cal.2d 378, 387 [189 P.2d 10].) Appellant asserts that there is no evidence of an agreement to the contrary. Under the bare record, we would not know whether appellant's statement is supported, but respondents make no point of this particular assertion by appellant.

But the presumption that joint bank accounts create true joint tenancy interests may be overcome by contrary evidence as to the intent of the person opening the account. (*Paterson* v. *Comastri,* 39 Cal.2d 66, 72, 73, 74 [244 P.2d 902]; *Machado* v. *Machado,* 58 Cal.2d 501, 506 [25 Cal.Rptr. 87, 375 P.2d 55]; *Estate of Brasz,* 200 Cal.App.2d 691, 697 [19 Cal. Rptr. 609].) Respondents point to several items of "evidence" which would sustain the finding that decedent's intention was not to create joint tenancies. We put the word "evidence" in quotations marks, because we have no reporter's transcript, nor do we have any evidence except the presumption and the note and deed of trust. Both documents are made to decedent "or heirs" and, to that extent, are favorable to respondents. Appellant protests, rightly, that the other items do not appear in the record, and we cannot take them into account.

But where does this leave appellant? Since appellant has not supplied us with the evidence, the sufficiency of the evidence to support the findings is not open to question. (*Kopf* v. *Milam,* 60 Cal.2d 600, 601 [35 Cal.Rptr. 614, 387 P.2d 390]; *White* v. *Jones,* 136 Cal.App.2d 567, 569 [288 P.2d 913]; 3 Cal.Jur.2d, Appeal and Error, § 260, pp. 781-782.) The trial judge recited that evidence had been introduced and made a finding that it was the intent of the testator that the names of joint tenants of his bank accounts take no interest therein until his death, at which time they would be entitled to the balance remaining in said bank accounts. No evidence

having been submitted to us, save the rebuttable presumption, we must take it that the evidence before the trial court was sufficient to rebut the presumption.

### *Pretermission*

Two married daughters of decedent claim as pretermitted heirs, and, because they would have taken one-half of the estate had decedent died intestate, they claim these one-half shares. The trial judge sustained their claims. There are two appellants as to this part of the order or judgment, the sister and the guardian of the estate of an incompetent brother of testator.

The pretermission statute, section 90 of the Probate Code, provides that omitted children of a testator succeed to the same share as if the decedent had died intestate unless (1) it appears from the will that such omission was intentional, or (2) there has been an advancement of an equal proportion of the testator's property, or (3) they have been provided for ''by any settlement.'' Appellants do not assert that pretermission is overcome by advancement.

Appellants contend that (1) it appears from the face of the will that the omission of the daughters is intentional, and (2) the insurance constitutes a settlement.

1. *Face of the will*. The daughters are not mentioned in the will by name or by descriptive words such as ''my daughters.'' There is a paragraph in the will, upon which appellants rely, which reads: ''Second, that after the five days internment [*sic*] at National Cemetery have expired the following parties be notified and supplied with authorized death certificate. National Service Life Ins. File F1215523—Policy V-449, Denver, Colorado. L. H. Bulcher Co., 15th & Vermont Street, San Francisco, California. Eagles Arie 61, 895 O'Farrell Street, San Francisco 2, California. ILWU—Local 6, 255 - 9th Street, San Francisco, California. Mrs. Una Kretschmer, 4030 Bellfontanis, Kansas City, Missouri.'' Mrs. Una Kretschmer is the divorced wife of testator. Whether the daughters are her children does not appear.

Appellants assert that although the quoted paragraph does not mention the daughters, actually each of them received $1,000 as a beneficiary of the policy referred to. This fact appears from the petition for instructions, and it is not denied. But Probate Code section 90 bars the introduction of evidence other than that found on the face of the will for the purpose of proving that testator intentionally omitted provision for his child. (*Estate of Torregano,* 54 Cal.2d 234, 243 [5 Cal.

Rptr. 137, 352 P.2d 505, 88 A.L.R.2d 597].) From the face of the will, all we know is that testator wished his divorced wife notified. Whether he had his daughters in mind, and recalled that they were beneficiaries, we cannot tell from the face of the will. ■ The necessity that the intention to omit appear from the face of the will is held to require that the intent appear from words which indicate the intent directly or by implication equally strong. Any other rule would lead to guesses or inferences merely conjectural. (*Estate of Torregano, supra,* p. 249; *Estate of Falcone,* 211 Cal.App.2d 40, 45 [27 Cal.Rptr. 38].)

■ Appellants argue that the fact that testator made no residuary devise shows intentional omission because the daughters take the residue as heirs, and the testator is presumed to have known that they would. But this by no means shows intentional omission directly or by implication equally strong. Failure to devise residue is not uncommon in wills such as this one, which obviously are not professionally drawn. Besides, testator may well have thought that he had disposed of everything, because he made specific bequests not only of the major item, his home, but of all manner of objects such as phonograph records and power tools. It is to be observed, too, that when he wished to show an intention to come close to cutting a person off, after leaving certain items to some brothers and sisters, he did so effectively by leaving the sum of one dollar (even describing that it should be paid by money order or certified check) to each of his living brothers and sisters. He did not make this applicable to daughters, or even to heirs, which might have avoided pretermission. (*Estate of McClure,* 214 Cal. App.2d 590 [29 Cal.Rptr. 569].)

The will does not on its face show an intention to omit the daughters.

■ 2. *Settlement.* Appellants contend that there exists an actual settlement which prevents pretermission, namely, the insurance policy. Section 90 of the Probate Code does not define settlement. Apparently there is but one case in which the word settlement (as used in section 90) appears, *Estate of Hale,* 75 Cal.App.2d 227 [170 P.2d 961]. There, the testatrix had made substantial provision for her grandchildren in a trust declaration, describing them therein as a class, namely, children of her son; and although the grandchildren were to take only contingently if their father were dead, it was held by the trial judge that testatrix intended

a settlement, and this was affirmed. Obviously, an outright and irrevocable trust is distinct from a life insurance policy in its nature, and may be different in its effect. But appellants point out that the court in *Hale* cited several New York cases in which life insurance policies were deemed to constitute settlements.

New York courts, particularly surrogate's courts, have indeed held life insurance policies to constitute settlements. (See cases collected in 170 A.L.R. 1373.) The New York statute (13 Consol.Laws, Decedent Estate Law, § 26), like that of California, gives no definition of settlement. But the Court of Appeals of New York has made it plain that the testator's intent is the "touchstone." (*In re Faber's Estate,* 305 N.Y. 200 [111 N.E.2d 883, 885].) This corresponds with the opinion in *Estate of Hale, supra,* at page 231. In *Faber* the court admonished that the factual situation in each case must be appraised in order to find intent. (111 N.E.2d at p. 885.) This, too, corresponds with California law. (*Estate of Torregano, supra,* 54 Cal.2d at p. 250.) (The evidence admissible may be different in the two states.)

But the New York statute differs from ours in content, and it has been interpreted less favorably than ours toward omitted children. Not only is the New York statute limited to provision for children, as distinguished from ours which includes issue of deceased children, but more important, it operates for the benefit only of children born after execution of the will, whereas California provides equally for those born before. The New York statute derives from an ancient premise that it will be presumed that a testator's intention has been altered when a child is born at some time after the will has been made, as explained by Chancellor Kent in *Brush* v. *Wilkins* (N.Y.) 4 Johns. Ch. 506, 515. Rebuttal of this presumed intention has been deemed to have been accomplished when the testator does make provision for the child, and his intention to effect settlement has been rather liberally construed by the New York courts. (1 U.C.L.A. L.Rev. 121-123.)

In California, from early times the purpose of our law, as expressed in the predecessor statutes to section 90, has been, as described by Chief Justice Field, "to protect the children against omission or oversight, which not unfrequently arises from sickness, old age, or other infirmity, or the peculiar circumstances under which the will is executed." (*Payne* v. *Payne,* 18 Cal. 291, 302.) Neglect at

the time of making of the will, therefore, is guarded against for the benefit of descendants already in existence as well as for those who come later. The policy of California against the omission of lineal descendants by reason of oversight, accident, mistake or unexpected change of condition finds expression in decisions of the Supreme Court interpreting section 90 as requiring direct expression or equally strong implication, from the face of the will, of intended omission. (*Estate of Torregano, supra*, p. 249, and cases cited therein.) Another expression of the same general policy is found in section 1050 of the Probate Code, which requires that an advancement be expressed as such by the testator in the grant or otherwise in writing, or by the donee in writing.

In passing on the subject of intent, we have in mind the above stated policy of our law. Because the law on settlement is almost wholly without interpretation in this state, we do not express an opinion whether life insurance may constitute settlement and, if so, under what circumstances, but we do conclude that in this case settlement, within the meaning of Probate Code section 90, has not been shown. We find no convincing evidence that the testator had his daughters in mind and deemed them cared for by settlement, namely, the insurance. The insurance policy is not described, except by the brief reference in the will. We do not know whether the beneficiaries could be changed at will or were irrevocably named. It is entirely possible that the testator did not recall the fact that the daughters were beneficiaries. We do not know when the policy was bought. It may have been long before the will was drawn. In his will, testator directs only that his former wife and the insurance company be notified of his death, and he says nothing whatever about his daughters.

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied April 7, 1965.